IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS

---

ROBERT E. CARTER,

        PLAINTIFF,

v.

U.S. BANK, NATIONAL ASSOCIATION,
LAW OFFICES OF REGENT & ASSOCIATES,
ANH REGENT in his capacity as an Attorney for
the Creditor; KELLY ALBERT in his capacity as an
Agent for ANH REGENT on behalf of the Creditor,
and LYNDEE LE in her capacity as Agent for ANH
REGENT on behalf of the Creditor,

        DEFENDANTS.

United States Courts
Southern District of Texas
F I L E D

MAR 0 4 2021

Nathan Ochsner, Clerk of Court

---

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER,
PRELIMINARY INJUNCTION, AND PERMANENT INJUNCTION**

---

Plaintiff Robert E. Carter seeks relief from this court against Defendant U.S. BANK, N.A., (a subsidiary of U.S. BANCORP. INC., and a depository financial institution insured by the Federal Deposit Insurance Corporation); LAW OFFICES OF REGENT & ASSOCIATES (a debt collections firm), ANH REGENT (an attorney license to practice in the State of Texas with Bar Card #24004882 in his capacity as an attorney for the Creditor), KELLY ALBERT (in his capacity as an agent on behalf of Regent & Associates) and LYNDEE LE (in her capacity as an agent on behalf of Regent & Associates) (collectively and together, the "Texas Defendants"). Plaintiff seeks an immediate temporary restraining order and permanent injunctive relief and in support show the Court as follows:

## EXECUTIVE SUMMARY

On September 9, 2020, Plaintiff personally guaranteed a purchase and sale of future receivables of his small business trucking company in the amount $15,000.00 taken from SauCheen Financing ("SauCheen") to finance the working capital needs of Plaintiff's small business trucking company. SauCheen charged a 25% rate on the receivables purchase for a total amount due to it under the personal guarantee of $22,485.00. Plaintiff repaid approximately $15,388.00 and had a remaining balance of $7,097.00. When Plaintiff had only two weeks

remaining on the SauCheen purchase, Flamingo Freedom Funding ("Flamingo") offered the exact same receivables purchase, with the exact same terms under the same personal guarantee. Plaintiff has a balance of $23,987.50 with Flamingo. Unbeknownst to Plaintiff at the time the receivables purchase agreements were executed and funded, Plaintiff was unaware that SauCheen and Flamingo were commonly owned.

Plaintiff authorized Saucheen and Flamingo to debit only two business bank accounts that he held at Defendants U.S. Bancorp and U.S. Bank, N.A. (together, "U.S. Bank") in which he held a personal interest, Acct #5908, and Acct #8238.

On October 22, 2020, Plaintiff's small business suffered a severe decline in its revenue. As a result, the daily payments that Plaintiff authorized SauCheen and Flamingo to withdraw could not be made. Plaintiff requested that SauCheen and Flamingo delay the daily payments until revenue increased. SauCheen and Flamingo declined and continued to attempt daily withdrawals which caused Plaintiff to incur multiple overdraft fees of $36.00 each time. After paying hundreds of dollars in fees, Plaintiff instructed Defendant U.S. Bank to stop ACH withdrawal attempts by SauCheen and Flamingo.

In November 2020, Plaintiff received multiple phone calls and email communications from Defendant Kelly Albert, ("Agent 1"). In these calls and emails, Plaintiff attempted to secure an agreement to repay the amounts owed to SauCheen and Flamingo. On November 19, 2020, Plaintiff executed an agreement to repay the amounts owed and to begin those payments on December 1, 2020. Plaintiff declined to execute an Agreed Judgement and explained to Agent 1 that on advice of counsel, he could not sign an Agreed Judgement. However, the contract that Plaintiff secured to allow the payments under the contract was not executed until December 15, 2020 and Plaintiff's first truck went active and into service on December 28, 2020.

Plaintiff had multiple conversations with Agent 1 about the contract process and why the payments were delayed. Agent 1 explained to Plaintiff that he would take a new agreement to Defendant Anh Regent, ("Regent") for approval and that this new agreement would prevent any legal action. Plaintiff, under the impression that a new agreement was being drawn up, awaited a response from Agent 1, it never came.

On January 25, 2021, while conducting a routine review of Plaintiff's accounts at Defendant U.S. Bank, Plaintiff notice unauthorized withdraws in the amounts of $500.00; $100.00; $13.34 and $34.23. These withdraws were identified as Garnishments. Plaintiff contacted Defendant U.S. Bank who informed Plaintiff that the Garnishments were in favor of Flamingo. Defendant U.S. Bank failed to provide additional information about the Garnishment to Plaintiff after multiple unsuccessful attempts to reach its Garnishment department.

On February 2, 2020, Agent 1 placed a call to Plaintiff. Plaintiff returned the call. During the call, Agent 1 apologized to Plaintiff and informed Plaintiff that he was not aware that the Garnishment action had been taken. Plaintiff stated that Agent 1 mislead Plaintiff into believing that a new agreement was forthcoming when in fact he knew or should have known that Regent had taken the Garnishment action. Rather than resolve the misrepresentation, Agent 1 attempted to extract additional money from Plaintiff. Plaintiff relayed that Defendant U.S. Bank had already

begun seizing assets of Plaintiff at the bank. Further, that there were not enough funds to make any payments until more revenue was generated. Plaintiff informed Agent 1 that it was unethical and misrepresentative to take the Garnishment action while making Plaintiff believe that an agreement to avoid such action was forth coming.

In a follow up email, Agent 1 stated that Plaintiff had signed an Agreed Judgement which permitted the Garnishment action and stated that the only way to remedy the Garnishment action was to pay $300.00. Agent 1 further threatened that if the $300.00 payment was not made, he would take additional action to levy other business accounts Plaintiff had with other vendors. (See Exhibit F) Plaintiff responded that he had not executed the Agreed Judgement and provided Agent 1 with a copy of the email sent to him weeks before explaining why Plaintiff would not sign the Agreed Judgement.

Defendant Regent and Defendant Law Offices of Regent & Associates, ("LORA") is a third-party debt collector and employs Defendant Lyndee Le ("Agent 2") and Agent 1. Defendants Regent, LORA, Agent 1 and Agent 2 violated several provisions of the Fair Debt Collection Practices Act (15 U.S.C. 1692) These group of Defendants also violated the Texas Finance Code, Chapter 392 on Debt Collection, specifically Section 392.304 of the Code. Furthermore, they violated the Texas Deception Trade Practices Act pursuant to the Texas Business and Commerce Code, Section 17.46(a). If an immediate restraining order is not issued, the Defendants will inflict irreparable harm upon Plaintiff that will become permanent as shown below.

Defendant U.S. Bank has caused irreparable harm, injury, and damage to Plaintiff. If the restraining order is not issued, the harm already caused will be permanent, and Plaintiff will suffer additional irreparable harm, injury, and damage as shown below. Therefore, pursuant to Chapter 63 of the Texas Civil Procedure and Practice, Section 59.008 (c) and Fed. R. Civ. P. 65(b)(1)(A) Plaintiff seeks an immediate temporary restraining order.

## PARTIES

1. Plaintiff, Robert E. Carter is an individual and resident of the state of Wisconsin. Plaintiff holds both personal and business accounts at Defendant U.S. Bank. Plaintiff executed the personal guarantee to repay the amounts outstanding to the Creditor.

2. According to its 2019 Annual Report, U.S. Bancorp is a public company traded on the New York Stock Exchange (USB). It is incorporated in the State of Delaware. It employs over 70,000 people and has more than $540 billion of assets and is the parent company of Defendant U.S. Bank. Its global headquarters is located at 800 Nicollet Mall, Minneapolis, MN 55402. It provides administrative services to its subsidiary U.S. Bank and shares management in common with U.S. Bank.

3. According to its website, Defendant U.S. Bank, N.A. is the 5th largest commercial bank in the United States by assets. It offers financial deposit accounts for individuals, small businesses, and large corporations as well as a suite of other financial products. It is located at 800 Nicollet Mall, Minneapolis, MN 55402. Defendant U.S. Bank has branches in Eau Claire, Wisconsin where Plaintiff holds accounts.

4. Defendant Law Offices of Regent & Associates is a Texas Professional Corporation/Company offering third-party debt collection services and files lawsuits and other legal actions on behalf of Creditors. It is located at 500 Lovett BLVD., Suite 225, Houston, Texas 77006.

5. Defendant Anh Regent is an attorney practicing law in the State of Texas with Bar Card #24004882 and is the principal of Defendant Law Offices of Regent & Associates, a third-party debt collector. He is located at 500 Lovett BLVD., Suite 225, Houston, Texas 77006.

6. Defendant Kelly Albert is an employee of Defendant Law Offices of Regent & Associates, a third-party debt collector and is directly supervised by Defendant Anh Regent. He is located at 500 Lovett BLVD., Suite 225, Houston, Texas 77006.

7. Defendant Lyndee Le is an employee of Defendant Law Offices of Regent & Associates, a third-party debt collector and is directly supervised by Defendant Anh Regent. He is located at 500 Lovett BLVD., Suite 225, Houston, Texas 77006.

## JURISDICTION

8. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this action is a civil action arising under the laws and statues of the United States, specifically the Fair Debt Collections Practices Act (15 U.S.C. § 1692(e) and 15 U.S.C. § 1692(i); diversity jurisdiction pursuant to 28 U.S.C § 1331(a)(1) because the amount in controversy is greater than $75,000 and the parties are completely diverse as Plaintiff resides in Wisconsin, Defendant U.S. Bank, N.A. has its headquarters and principal place of business in Minnesota and has branches throughout the United States including Wisconsin, and Defendants Law Offices of Regent & Associates, Regent, Albert and Le are residents of Texas; supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over state law claims so related to claims in an action within original jurisdiction that they form part of the same case or controversy; to secure preliminary and permanent injunctive relief pursuant to 28 U.S.C. § 2202; and to secure a temporary restraining order pursuant to Fed. R. Civ. P. 65(b)(1)(A).

## FACTS

### *The Garnishment Action*

9. On or about December 28, 2020, the Texas Defendants filed an Agreed Judgement with Cause No. 1161397. The Texas Defendants represented that the Agreed Judgement had been signed by the Plaintiff.

10. The Texas Defendants using this purported Agreed Judgement obtained a Writ of Garnishment and served that Writ upon Defendant U.S. Bank.

11. On or about January 25, 2020, Defendant U.S. Bank executed the Writ of Garnishment against four bank accounts and a security deposit account held by Plaintiff at Defendant U.S. Bank.

12. Defendant U.S. Bank seized $500.00 from Acct#3553. It seized $13.42 from Acct#5908 and it took back a payment in the amount of $250.00 that had been paid to another Vendor from this account. It seized $34.70 from Acct#8238 and deducted $100.00 for a legal processing fee from this account.

13. Defendant U.S. Bank seized a $2,000.00 security deposit held at the bank by Plaintiff for a personal credit card Acct#7244. Defendant U.S. Bank closed the credit card account after seizing the security deposit.

14. Defendant U.S. Bank has placed holds on all accounts.

### Texas Finance Code § 59.008-Claims Against Customers of Financial Institutions

15. When a Writ of Garnishment Action is obtained in a Texas Court, the burden is upon the customer to seek a remedy. Subsection (c) provides, *"the customer bears the burden of preventing or limiting a financial institution's compliance with or response to a claim subject to this section by seeking an appropriate remedy, including a restraining order, injunction, protective order, or other remedy, to prevent or suspend the financial institution's response to a claim against the customer."*

### Fed. R. Civ. P. 65(b)(1)(A)

16. In order to obtain a temporary restraining order, a Plaintiff must *"clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."*

### Plaintiff Has Suffered Actual Injury, Loss and Damage

17. Plaintiff has suffered actual injuries, losses, and damages because of Defendant U.S. Bank's action against Plaintiff's accounts. Plaintiff will suffer even more harm if Defendant U.S. Bank is not restrained.

18. Plaintiff maintained secured credit card Acct# 7244 at U.S. Bank.

19. Plaintiff deposited $2,000.00 in a security account with Defendant U.S. Bank to help rebuild his personal credit. Acct# 7244 was reported to the three major credit bureaus and had a positive impact on Plaintiffs credit history.

20. Defendant U.S. Bank after garnishing the $2,000.00 security deposit, closed Acct# 7244 and reported the closure to the credit bureaus. As a result, Plaintiff's credit score dropped 22 points. Thus, Plaintiff has suffered actual loss and Plaintiff has been permanently

injured. This harm was immediate and damaging to Plaintiff and will continue if U.S. Bank is not restrained.

21. Plaintiff maintains Acct# 9379, a personal checking account at Defendant U.S. Bank.

22. Defendant U.S. Bank has a hold on Plaintiff's personal account preventing the use of wage earnings deposited into that account. The Texas Constitution prohibits wage earnings from being garnished. U.S. Bank is violating the Texas Constitution's prohibition on wage earnings. Because of the hold, Plaintiff cannot access wages deposited into Acct# 9379 thus causing an actual injury to Plaintiff. This injury will continue unless U.S. Bank is restrained.

23. Plaintiff maintains Acct# 8238, an employee payroll account at Defendant U.S. Bank.

24. Acct#8238 is the payroll account from which employees are paid. Defendant U.S. Bank is causing harm to Plaintiff because the account cannot be used to pay the wages of employees. If employees are not paid, they will not work. And if the employees do not work, there can be no earnings to satisfy the debt. Thus, U.S. Bank is causing immediate injury to Plaintiff as two employees have indicated that they will quit if they are not paid by February 12, 2021. If U.S. Bank is not restrained, the loss of the two employees will be damaging for Plaintiff.

25. Plaintiff maintains Acct# 3553, a revenue deposit account at Defendant U.S. Bank.

26. Acct#3553 is the primary account into which linehaul deposits are sent. Plaintiff transfers funds from the linehaul account to pay the payroll expenses from Acct# 8238. U.S. Bank is causing harm to Plaintiff because deposits to the linehaul account is on hold and no funds can be transferred. The damage that will result from U.S. Bank's continued action will be lasting and potentially permanent if U.S. Bank is not restrained.

27. U.S. Bank is causing harm to Plaintiff because Acct#3553 is the account designated to receive the loan proceeds from the Small Business Paycheck Protection Program. Plaintiff received a first round Paycheck Protection loan which was instrumental in helping Plaintiff to keep his employees.

28. The hold that U.S. Bank has on Acct# 3553 will cause immediate harm to Plaintiff and damage Plaintiff because the Paycheck Protection Program loan proceeds cannot be used to pay money to retire a debt. The Paycheck Protection Program loan proceeds must be used to pay operating and payroll expenses which Plaintiff cannot pay while U.S. Bank maintains a hold on Acct #3553. If U.S. Bank is not restrained the harm and damage to Plaintiff will become permanent.

29. Plaintiff maintains Acct# 5908, a general operating account at U.S. Bank.

30. U.S. Bank is causing harm to Plaintiff by placing a hold on the account. Plaintiff cannot properly maintain relationships to generate revenue because he is unable to pay fees associated with generating revenue or securing capital to repay outstanding debts.

31. For example, Plaintiff paid a $250.00 fee to MDF Fund, I LP community impact investing firm for conducting its due diligence on Plaintiff and for the benefit of securing a larger investment amount to cover operating expenses and refinance all current debt.

32. The payment was withdrawn from Acct #5908 and paid to MDF Fund, I LP. U.S. Bank took the money back from MDL Fund, I LP after it had been recorded as paid. This action caused the MDF Fund I, PL to contact Plaintiff about the payment. Plaintiff incurred fees from MDL Fund I LP and other negative impacts could follow.

33. U.S. Bank is the direct cause of this harm to Plaintiff and has caused damaged to Plaintiff with MDF Fund I, LP that will be permanent and irreparable if U.S. Bank is not restrained.

34. Plaintiff has demonstrated actual losses, harm, damages, and irreparable harm by U.S. Bank. If U.S. Bank is not restrained now, its acts could further cause harm, damages, and irreparable harm.

35. Plaintiff seeks this immediate restraining order and has given U.S. Bank notice of the request by delivering a copy of this action to James L. Chosy, Executive Vice-President and General Counsel at U.S. Bancorp, its parent company's headquarters at 800 Nicollet Mall, Minneapolis, MN 55402 through certified U.S. Mail Return Receipt. Plaintiff has also provided notice of the request by delivering a copy of this action to Stephanie Olson, Branch Manager, Eau Claire Oakwood branch at 4640 Golf Road, Eau Claire, WI 54701.

36. Plaintiff cannot await a hearing on this request because the harm caused by U.S. Bank has already happened. Losses and injuries have already occurred, and the damages will be permanent if the retraining order is not granted immediately.

37. The Texas Defendants have injured plaintiff through their deceptive debt collection practices in obtaining a Writ of Garnishment.

38. The Texas Defendants have threatened further injury and harm to Plaintiff using continued deceptive and misleading debt collection practices by sending Plaintiff an email threatening to further injure Plaintiff with at least two contractors unless Plaintiff pays a certain amount of the debt.

39. The Texas Defendants have caused actual harm and injury to Plaintiff with one of Plaintiff's contracts because the contractor has refused to release a payment that is due.

40. The Texas Defendants have caused actual harm and injury to Plaintiff with at least two other contracts because the contractors will not permit business or payments to be released.

addresses used to communicate with Plaintiff and via their address at 500 Lovett Blvd., Ste. 225, Houston, Texas 77006 through certified mail U.S. Return Receipt.

42. Plaintiff cannot await a hearing on this request because the harm caused by the Texas Defendants has already happened. Losses and injuries have already occurred. The Texas Defendants have threatened further harm and injury. These injuries, harms and damage could become permanent if the restraining order is not granted immediately.

**The Rooker-Feldman Doctrine**

43. The Rooker-Feldman Doctrine is inapplicable in this action. First, Plaintiff does not challenge the Writ of Garnishment obtained in the Harris County Court.

44. Second, Plaintiff seeks the restraining order against Defendant U.S. Bank pursuant to a Texas Statute requiring Plaintiff to seek separate relief against a Financial Institution where the consumer is a customer.

45. Third, Plaintiff is suing the Texas Defendants directly for violations arising from the Fair Debt Collections Practices Act, the Texas Deceptive Trade Practices Act, pursuant to the Texas Business and Commerce Code Section 17.46(a), and the Texas Finance Code, Title 5, Protection of Consumers of Financial Services, Chapter 392 on Debt Collections.

**The Fair Debt Collections Practices Act (15 U.S.C. 1692); Texas Finance Code (Chapter 392) and The Texas Deceptive Trade Practices Act Pursuant to the Texas Business and Commerce Code Section 17.46(a)**

46. Congress passed the FDCPA to protect consumers from abusive and fraudulent acts by consumer collection agencies and third-party debt collectors. The Federal Trade Commission helps to enforce the intent of Congress under the FDCPA.

47. The State of Texas enacted the Debt Collections provisions of the Texas Finance Code to protect consumers from abusive and fraudulent acts by consumer collection agencies and third-party debt collectors.

48. The State of Texas enacted the Texas Deceptive Trade Practices Act pursuant to Section 17.46(a) of the Texas Business and Commerce Code to ensure that third party debt collectors would not escape liability from the use of deceptive debt collections practices and to protect consumers from such behavior.

49. As more specifically set forth below, the Texas Defendants violated multiple provisions of the FDCPA, the Texas Finance Code, and the Texas Deceptive Trade Practices Act. If not restrained, the Texas Defendants will continue to violate provisions of the FDCPA, the DTPA and the Texas Finance Code.

50. The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the

collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).

51. The Texas Finance Code defines "debt collector" as "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collection system, device, or scheme intended to be used to collect consumer debts."

52. The Texas Finance Code defines "debt collection" as "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor."

53. The Texas Finance Code defines "third-party debt collector" as "a debt collector, as defined by 15 U.S.C. Section 1692(a)(6) but does not include an attorney collecting a debt as an attorney on behalf of and in the name of a client unless the attorney has non-attorney employees who: (A) are regularly engaged to solicit debts for collection; and (2) regularly make contact with debtors for the purpose of collection or adjustment of debts."

54. The Texas Defendants are engaged in the business of debt collection.

55. The Texas Defendants are third-party debt collectors because although Defendant Regent is an attorney, he employs Defendant Kelly and Defendant Le who are non-attorneys and they regularly engage in solicitation of debt for collection and they regularly make contact with debtors for the purpose of collection or adjustment of debts.

56. Defendant Kelly is not an attorney.

57. Defendant Kelly is employed by Defendant Regent at Defendant LORA.

58. Defendant Kelly engages regularly in the solicitation of debts for collection on behalf of Defendant Regent at Defendant LORA.

59. Defendant Kelly regularly makes contact with debtors for the purpose of collecting and adjusting debts on behalf of Defendant Regent at Defendant LORA.

60. Defendant Kelly made regular contact with Plaintiff for the purpose of collecting and adjusting a debt.

61. Defendant Le is not an attorney.

62. Defendant Le is employed by Defendant Regent at Defendant LORA.

63. Defendant Le engages regularly in the solicitation of debts for collection on behalf of Defendant Regent at Defendant LORA.

64. Defendant Le regularly makes contact with debtors for the purpose of collecting and adjusting debts on behalf of Defendant Regent at Defendant LORA.

65. The Texas Defendants are debt collectors and they fit within the broad meaning of a debt collector.

66. The Texas Defendants sent multiple correspondence to Plaintiff stating that it represented two original creditors of the Plaintiff.

67. The Texas Defendants made multiple phone calls to Plaintiff seeking to collect money on a debt owed to two third parties.

68. The Texas Defendants sent multiple emails to Plaintiff seeking to collect money on a debt owed to two third parties.

69. The Texas Defendants negligently misrepresented an Agreed Judgement and obtained a Writ of Garnishment upon that negligent misrepresentation.

70. The Texas Defendants sent Plaintiff an Agreed Judgement for Plaintiff to sign. Plaintiff refused to sign the Agreed Judgement and advised Texas Defendants in an email that he could not do so on advice of counsel.

71. The Texas Defendants then deceived Plaintiff by misleading Plaintiff to believe that an agreement to repay the debt was forthcoming, but instead filed a Harris County Court action.

72. The Texas Defendants threatened to interfere with Plaintiff's contractual relationships unless Plaintiff made a payment.

73. In an email to Plaintiff, the Texas Defendants stated that they would send out information to at least two additional vendors of Plaintiff if Plaintiff did not surrender a $300.00 payment.

74. To avoid the threat of the Texas Defendants, Plaintiff paid them $300.00.

75. The Texas Defendants interfered with Plaintiff's contractual relationships.

76. Plaintiff requested a payment and other changes from one Vendor. The vendor responded in an email that it could not honor the payment or make any changes because the Texas Defendants had restrained them from doing so.

77. The Vendor responded in an email to Plaintiff that, "we need documentation that the loan to Flamingo has been paid."

78. The Texas Defendants conspired together for the real and predominant purpose of injuring Plaintiff in his trade, his person and other interests.

79. The Texas Defendants devised a plan using deceptive practices and abuse of the legal process system to force payments from Plaintiff.

80. The deceptive practices and abuse of the legal process caused direct personal injury to the Plaintiff because Plaintiff's credit score dropped 22 points; and Plaintiff lost a personal secured credit account.

81. The Texas Defendants injured Plaintiff in his trade, his person and other interests because at least one vendor responded to the Plaintiff that it would not and would not honor contractual obligations because of the deceptive practices and actions of the Texas Defendants.

82. Because the Texas Defendants have violated provisions of the Texas Debt Collections Act, they are deemed to have automatically violated the Texas Deceptive Trade Practices Act, the tie-in provision, pursuant to Section 392.404(a).

## <u>COUNT I</u>
## THE USE OF DECEPTIVE MEANS TO COLLECT
## OR ATTEMPT TO COLLECT ANY DEBT IN VIOLAITON OF THE FDCPA
## (15 U.S. C. § 1692(e)(10)

83. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

84. Plaintiff dealt with Texas Defendants in good faith in order to resolve an outstanding debt owed to two third parties. In dealing with Texas Defendants, Plaintiff expected Texas Defendants to deal in good faith.

85. Plaintiff engaged in a negotiation with Texas Defendants to prevent a county court action and to prevent interference with Plaintiff's contracts.

86. During the discussion with Texas Defendants, specifically, Defendant Kelly, also known as Agent 1 in this action, Kelly told Plaintiff that due to the first agreement terms not being met, if Plaintiff would agree to make payments under a certain payment plan in a second agreement, no legal action would be taken against Plaintiff.

87. Plaintiff discussed a second agreement with Kelly. Kelly informed Plaintiff that the second agreement would be taken to Defendant Regent for approval. Kelly also informed that while Defendant Regent was considering the second agreement, no legal action would be taken.

88. While Plaintiff was waiting for Texas Defendants to respond to the second agreement negotiated by Plaintiff and Defendant Kelly, a county court action was filed. The Texas Defendants obtained a Writ of Garnishment which it executed against Plaintiff.

89. Defendant Kelly called Plaintiff shortly thereafter. Plaintiff asked Defendant Kelly why the county court action was filed when Plaintiff and Defendant Kelly had negotiated a second agreement that was under consideration. Defendant Kelly apologized and stated that he thought the second agreement was under consideration, but that Defendant Regent had filed the county action instead.

90. The Texas Defendants deceived Plaintiff to collect the debt. Defendant Kelly knew or should have known, that the second agreement he negotiated with Plaintiff, and on which Plaintiff relied to prevent the county action, was not under consideration when Defendant Kelly made that representation.

## COUNT II
### THE FAILURE TO DISCLOSE IN INITIAL ORAL COMMUNICATION AND SUBSEQUENT COMMUNICATIONS THAT THE DEBT COLLECTOR IS ATTEMPTING TO COLLECT A DEBT; INFORMATION TO BE USE FOR THAT PURPOSE
### (15 U.S.C § 1692(e)(11)

91. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

92. The Texas Defendants failed to disclose in their initial phone call with Plaintiff that they were debtor collectors; that they were attempting to collect a debt; and that any information obtained from Plaintiff would be used for the purposes of collecting that debt.

93. The Texas Defendants failed to make this disclose in at least three (3) phones with Plaintiff regarding the debts.

94. The Texas Defendants sent Plaintiff at least five (5) subsequent communications in the form of emails.

95. The Texas Defendants failed to disclose in any of these subsequent emails that they were debtor collectors; that they were attempting to collect a debt; and that any information obtained from Plaintiff would be used for the purposes of collecting that debt.

96. The Texas Defendants sent Plaintiff at least three (3) letters attached to emails sent to Plaintiff.

97. The Texas Defendants failed to disclose in any of these subsequent letters that they were debt collectors; that they were attempting to collect a debt; and that any information obtained from Plaintiff would be used for that purpose.

## COUNT III
## FAILURE TO PROPERLY PROVIDE DEBTOR WITH THE REQUIRED NOTICE OF THE DEBT TO BE COLLECTED
### (15 U.S.C. § 1692(g)(a)(3)(4)(5)

98. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

99. The Texas Defendants failed to properly provide Plaintiff with the required notice of the debt being collected in any of the written or verbal communications that it sent to Plaintiff.

100.   The Texas Defendants failed to provide in its communication with Plaintiff, a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

101.   The Texas Defendants failed to provide in its communication with Plaintiff, a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector.

102.   The Texas Defendants failed to provide in its communication with Plaintiff, a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.


## COUNT IV
## FAILURE TO FILE ANY LEGAL ACTION IN THE JUDUCIAL DISTRICT WHERE THE CONTRACT WAS SIGNED OR WHERE THE DEBTOR LIVED AT THE COMMENCEMENT OF SUCH ACTION
### (15 U.S.C. § 1692(i)(2)(A) and (B)

103.   Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

104.   The Creditor and Plaintiff executed a contract designating New York State as the forum for any litigation with regard to disputes arising from or out of the contract.

105.    Plaintiff resided in the State of Wisconsin at the time the contract was executed with the Creditor.

106.   The Texas Defendants are debt collectors and have extensive knowledge of the provisions of the FDCPA.

107.     The Texas Defendants therefore knew or should have known that any legal action it sought to bring against Plaintiff must have been brought in the judicial district were Plaintiff signed the contract or in the judicial district where Plaintiff resided at the commencement of the action.

108.     The Texas Defendants filed an Agreed Judgement in the Harris County Court in Houston, Texas.

109.     Plaintiff had not agreed to execute an Agreed Judgement and in an email to the Texas Defendants, made clear that on the advice of counsel, Plaintiff could not sign an Agreed Judgement.

110.     Nevertheless, the Texas Defendants filed an Agreed Judgement claiming it to have been signed by Plaintiff, however Plaintiff was not aware that he had signed an Agreed Judgement with the Creditor because the Creditor did not inform Plaintiff that he was signing a document other than the loan proceeds and ACH authorization documents.

111.     The Texas Defendants knew that Plaintiff did not live in State of Texas.

112.     The Texas Defendants knew that Plaintiff resided in State of Wisconsin at the time they filed the action in Harris County in Houston, Texas.

113.     The Texas Defendants knew that the Plaintiff had signed the agreement with the Creditor in the State of Wisconsin.

114.     The Texas Defendants violated the above provision of the FDCPA when it filed the action in Harris County in Houston, Texas because Plaintiff executed the contract in the State of Wisconsin and Plaintiff resided in Wisconsin at the time the Texas Defendants filed the action in Harris County in Houston, Texas.

## COUNT V
## USE OF THREATS, COERCION, OR ATTEMPTS BY THREATENING TO TAKE AN ACTION PROHIBITED BY LAW
### (TEX. FIN. CODE ANN. § 392.301(a)(8)

115.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

116.     The Texas Defendants threatened and coerced Plaintiff to make a payment on the Debt that it was collecting for a third-party.

117.     In an email on February 2, 2021, the Texas Defendants threatened and coerced Plaintiff to make a payment in the amount of $300.00.

118.     The Texas Defendants stated in the email that if Plaintiff failed to make the payment, then they would contact at least two of Plaintiff's clients, CH Robinson and JB Hunt.

119.     More specifically, Defendant Kelly, acting as an Agent for the Texas Defendants, and after the Texas Defendants had caused Defendants U.S. Bancorp and U.S. Bank to seize Plaintiff's accounts, wrote in the February email, "Our lead counsel has agreed to release your accounts with only a $300.00 payment and some kind of arrangement. Just FYI I am scheduled to send UCC account receivables freeze request to a couple of your vendors today with CH Robinson and JB Hunt being the first. I don't want to do that but without any kind of payment or arrangement, my hands are tied."

120.     Because Defendant U.S. Bank had seized Plaintiff accounts and because the Texas Defendants were threatening to contact Plaintiff's vendors, Plaintiff paid the $300.00.

121.     The Defendants were prohibited by 15 U.S.C. § 1692(i)(2)(A) and (B) from even bringing the Harris County action that obtained the Writ of Garnishment seizing Plaintiff's bank accounts.

122.     The Texas Defendants then used the Writ of Garnishment obtained in the prohibited legal action to coerce a $300.00 payment from Plaintiff and then threaten to contact other vendors if Plaintiff did not pay.

123.     The Texas Defendants have violated § 392.301(a)(8) by using the Writ of Garnishment, obtained in a prohibited legal action, coercing a payment of $300.00 and threatening to contact two vendors of the Plaintiff.

## COUNT VI
## USE OF FRAUDULENT, DECEPTIVE, OR MISREPRESENTATIONS TO COLLECT A DEBT
## (TEX. FIN. CODE ANN. § 392.304(a)(5)(A) and (B))

124.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

125.     The Texas Defendants failed to disclose in their initial phone call with Plaintiff that they were debtor collectors; that they were attempting to collect a debt; and that any information obtained from Plaintiff would be used for the purposes of collecting that debt.

126.     The Texas Defendants failed to make this disclosure in at least three (3) phones with Plaintiff regarding the debts.

127.     The Texas Defendants sent Plaintiff at least five (5) subsequent communications in the form of emails.

128.     The Texas Defendants failed to disclose in any of these subsequent emails that they were debtor collectors; that they were attempting to collect a debt; and that any information obtained from Plaintiff would be used for the purposes of collecting that debt.

129.     The Texas Defendants sent Plaintiff at least three (3) letters attached to emails sent to Plaintiff.

130.     The Texas Defendants failed to disclose in any of these subsequent letters that they were debt collectors; that they were attempting to collect a debt; and that any information obtained from Plaintiff would be used for that purpose.

**COUNT VII**
**USE OF ANY OTHER FALSE REPRESENTATION OR**
**DECEPTIVE MEANS TO COLLECT A DEBT**
**(TEX. FIN. CODE ANN. § 392.304(a)(5)(A)(19)**

131.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

132.     The Texas Defendants used deceptive means to obtain the Writ of Garnishment; cause Defendant U.S. Bank to seize Plaintiff accounts; and to coerce Plaintiff to make a payment in the amount of $300.00.

133.     The Texas Defendants knew that pursuant to 15 U.S.C. § 1692(i)(2)(A) and (B) they were prevented from bringing the action in a legal jurisdiction other than the jurisdiction where the debt obligation was signed or where the Plaintiff resided at commencement of the debt obligation.

134.     The Texas Defendants knew that Plaintiff signed the original finance documents in Wisconsin, and they knew that Plaintiff resided in Wisconsin.

135.     The Texas Defendants also knew that the Plaintiff and the original creditor executed a contract selecting New York State as the forum to settle any disputes between creditor and Plaintiff.

136.     Despite this knowledge, the Texas Defendant brought a legal action in Harris County in Houston, Texas and obtained a Writ of Garnishment.

137.     The Texas Defendants deceived the County Clerk's Office in Harris County in Houston, Texas by not revealing the fact that they were seeking to obtain a Writ of Garnishment which was prohibited by 15 U.S.C. § 1692(i)(2)(A) and (B) and they deceived the County Clerk's Office by failing to reveal that they knew that Plaintiff resided in Wisconsin and that Plaintiff had executed the finance documents in Wisconsin.

138.     The Texas Defendants deceived Defendant U.S. Bank by failing to disclose that it had obtained the Writ of Garnishment in violation of 15 U.S.C. § 1692(i)(2)(A) and (B) and causing Defendant U.S. Bank to seize Plaintiff's bank accounts.

139.     The Texas Defendant's deceived Plaintiff by using an Agreed Judgement that Plaintiff was not aware that he had executed after Plaintiff specifically refused to execute an Agreed Judgement at the Texas Defendant's request.

140.     The Texas Defendants also deceived Plaintiff by failing to timely and adequately provide Notice to Plaintiff. The Defendants waited over a month to provide Notice to Plaintiff.

141.     The Texas Defendants filed the Writ of Garnishment action on December 28, 2020. The Writ was signed by the County Clerk on January 8, 2021 and Plaintiff received a copy of the Writ on February 8, 2021 after complaining to the Texas Defendants that no Notice had been served.

142.     The Notice of the Writ stated, "You have the right to regain possession of the property by filing a Replevy Bond. You have a right to seek possession of the property by filing with the court a motion to dissolve this Writ."

143.     The Texas Defendants deceived Plaintiff because they intentionally withheld the Notice of the Writ from the Plaintiff. While withholding the Notice of Writ, the Texas Defendants were coercing a payment of $300.00 from Plaintiff and threatening to use the Writ against Plaintiff at other vendors.

144.     The Texas Defendants further deceived Plaintiff by not informing Plaintiff, at the time he requested a copy of the Notice that he had other remedies to reclaiming possession of the property other than paying $300.00 to the Texas Defendants.

145.     By obtaining the Writ of Garnishment through means prohibited by law, the Texas Defendants deceived DefendantU.S. Bank; by failing to disclose to the Harris County Clerk that Defendant was not a resident of Texas, the Texas Defendants deceived the County Clerk; and by failing to provide Plaintiff with timely Notice of the Writ which contained other options for regaining access to the seized property, the Texas Defendants deceived Plaintiff.

### COUNT VIII
### AUTOMATIC VIOLATION OF THE TEXAS
### DECEPTIVE TRADE PRATICES ACT
### (TEX. FIN. CODE ANN. § 392.304(a)

146.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

147.     As provided above in the foregoing paragraphs, the Texas Defendants have violated multiple provisions of the Texas Debt Collection Practices Act ("TDCPA").

148.     Because the Texas Defendants have violated the TDCPA, they are deemed to have automatically violated the Texas Deceptive Trade Practices Act ("TDTPA").

149.     The tie-in provision pursuant to TEX. FIN. CODE ANN. § 392.304(a) applies to the Texas Defendants.

**COUNT IX**
**INTENTIONAL INTERFERENCE WITH ECONOMIC**
**AND CONTRACTUAL RELATIONSHIPS**
**(U.S. Bancorp & U.S. Bank, N.A.)**

150.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

151.     The Texas Defendants are third-party debt collectors.

152.     The Texas Defendants wrongfully, willfully, and intentionally interfered with the deposit contract that Plaintiff has with Defendant U.S. Bank, N.A.

153.     On or about March 8, 2020, Plaintiff entered into a deposit contract with U.S. Bank, N.A. to hold deposits, borrow money, and conduct other financial business with U.S. Bank.

154.     The contracts were entered into for Acct #s 3553, 5908, 9378, and 8238.

155.     The contracts for these accounts are current and ongoing.

156.     On or about January 8, 2021, the Texas Defendants obtained a Writ of Garnishment from the Harris County Clerk Office.

157.     The Texas Defendants used the Writ of Garnishment to cause the Defendant U.S. Bank to seize Plaintiff's bank accounts on or about January 25, 2021.

158.     The Texas Defendants obtained the Writ of Garnishment in violation of 15 U.S.C. § 1962(i)(2)(A) and (B).

159.     By and through the wrongful obtainment and use of the Writ of Garnishment, the Texas Defendants interfered with the deposit and lending contracts that Plaintiff has and had with Defendant U.S. Bank.

160.     The Texas Defendants delivered the Writ of Garnishment to Defendant U.S. Bank causing Defendant U.S. Bank to seize Plaintiff's bank account.

161.     Once seized, Plaintiff was unable to access the accounts to meet payroll for his employees; transfer funds between accounts; or access funds deposited into the accounts.

162.     Plaintiff had made a payment in the amount of $250.00 to MDF Fund I, LP to cover fees for a contemplated transaction day prior to the seizure and Defendant U.S. Bank withdrew those funds from MDF Fund I, LP causing Plaintiff to incur a bank fee of $36.00 and a $10.00 fee with MDF Fund I, LP.

163.     As a result of the Texas Defendant's wrongful obtainment of the Writ of Garnishment and delivering it to Defendant U.S. Bank, Plaintiff was harmed and injured by the acts of the Texas Defendants.

164.     Because of the action taken by the Texas Defendants in wrongfully obtaining the Writ of Garnishment Plaintiff suffered actual damages and losses as noted.

165.     The Texas Defendants are liable.

## COUNT X
## INTENTIONAL INTERFERENCE WITH ECONOMIC
## AND CONTRACTUAL RELATIONSHIPS
### (U.S. Bancorp & U.S. Bank, N.A.)

166.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

167.     The Texas Defendants are third-party debt collectors.

168.     The Texas Defendants wrongfully, willfully, and intentionally interfered with the deposit contract that Plaintiff has with Defendant U.S. Bank, N.A.

169.     In or about March 2020, Plaintiff entered into a security deposit contract with U.S. Bank, N.A. to hold a deposit, for a secured credit card account with U.S. Bank.

170.     The contract was entered into for Acct #7244.

171.     The contract was ended on January 25, 2021 by Defendant U.S. Bank.

172.     On or about January 8, 2021, the Texas Defendants obtained a Writ of Garnishment from the Harris County Clerk Office.

173.     The Texas Defendants used the Writ of Garnishment to cause the Defendant U.S. Bank to seize Plaintiff's bank accounts on or about January 25, 2021.

174.     The Texas Defendants obtained the Writ of Garnishment in violation of 15 U.S.C. § 1962(i)(2)(A) and (B).

175.     By and through the wrongful obtainment and use of the Writ of Garnishment, the Texas Defendants interfered with the security deposit contract that Plaintiff has and had with Defendant U.S. Bank.

176.     The Texas Defendants delivered the Writ of Garnishment to Defendant U.S. Bank causing Defendant U.S. Bank to seize Plaintiff's security deposit.

177.     Once seized, Plaintiff was unable to access the credit card account for use under the security agreement and contract.

178.     Plaintiff provided Defendant U.S. Bank with $2,000.00 to be deposited into a security account for the purpose of securing the opening of a secured credit card account and complied with the terms of the contract.

179.     As a result of the Texas Defendant's wrongful obtainment of the Writ of Garnishment and delivering it to Defendant U.S. Bank, Plaintiff was harmed and injured by the acts of the Texas Defendants.

180.     Because of the action taken by the Texas Defendants in wrongfully obtaining the Writ of Garnishment Plaintiff suffered actual injuries, damages and losses as noted below.

181.     Plaintiff lost the $2,000.00 deposit that he provided to Defendant U.S. Bank.

182.     Plaintiff's secured credit card account was closed and no longer accessible.

183.     Defendant U.S. Bank reported the closure to the three major credit bureaus causing Plaintiff's credit score to drop by 22 points.

184.     The Texas Defendants caused the injuries, damages and losses in Paragraphs 181-183 and are therefore liable.

## COUNT XI
## INTENTIONAL INTERFERENCE WITH ECONOMIC
## AND CONTRACTUAL RELATIONSHIPS
### (Engaged Financial)

185.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

186.     The Texas Defendants are third-party debt collectors.

187.     The Texas Defendants wrongfully, willfully, and intentionally interfered with the factoring contract that Plaintiff has with Engaged Financial.

188.     On July 14, 2020, Plaintiff entered into a factoring contract with Engaged Financial for the advance payment of Plaintiff's invoices.

189.     The contract is active and remains in force until January 13, 2022.

190.     On or about January 8, 2021, the Texas Defendants obtained a Writ of Garnishment from the Harris County Clerk Office.

191.     The Texas Defendants used the Writ of Garnishment to cause Engaged Financial to withhold payments due to Plaintiff.

192.     The Texas Defendants obtained the Writ of Garnishment in violation of 15 U.S.C. § 1962(i)(2)(A) and (B).

193.     By and through the wrongful obtainment and use of the Writ of Garnishment, the Texas Defendants interfered with the contract that Plaintiff has with Engaged Financial.

194.     The Texas Defendants delivered the Writ of Garnishment to Engaged Financial causing Engaged Financial to withhold payments from Plaintiff.

195.     Engaged Financial holds payments that are due to the Plaintiff in the amount of $4,044.38.

196.     As a result of the Texas Defendant's wrongful obtainment of the Writ of Garnishment and delivering it to Engaged Financial, Plaintiff has been harmed and is being injured by the acts of the Texas Defendants.

197.     Because of the action taken by the Texas Defendants in wrongfully obtaining the Writ of Garnishment Plaintiff suffered actual injuries, damages and losses as noted in the amount of $4,044.38.

198.     The Texas Defendants caused the injuries, damages and losses in Paragraphs 194-197 and are therefore liable.

## COUNT XII
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE
## BUSINESS RELATIONSHIPS
## (JB HUNT TRANSPORTS)

199.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

200.     The Texas Defendants are third-party debt collectors.

201.    The Texas Defendants wrongfully, willfully, and intentionally threatened to interfere with the carrier contract and prospective business that Plaintiff has with JB Hunt Transports.

202.    On or about March 21, 2020, Plaintiff entered into a carrier contract with JB Hunt Transports to pick-up, move and deliver through interstate commerce, the cargo of its shipping customers.

203.    The contract is current and ongoing and offers Plaintiff the opportunity to conduct shipments at will. Because Plaintiff has done shipments previously with JB Hunt Transports, there is a reasonable probability that Plaintiff will ship again with JB Hunt Transports.

204.    On or about January 8, 2021, the Texas Defendants obtained a Writ of Garnishment from the Harris County Clerk Office.

205.    The Texas Defendants obtained the Writ of Garnishment in violation of 15 U.S.C. § 1962(i)(2)(A) and (B).

206.    The Texas Defendants used the Writ of Garnishment to threaten Plaintiff that if he did not make a payment to them, they would interfere with the contract and prospective business that Plaintiff has with JB Hunt.

207.    Specifically, on February 2, 2021, the Texas Defendants, acting through its agent, Defendant Kelly, sent the following email, "Our lead counsel has agreed to release your accounts with only a $300.00 payment and some kind of arrangement. Just FYI I am scheduled to send UCC account receivables freeze request to a couple of your vendors today with CH Robinson and JB Hunt being the first. I don't want to do that but without any kind of payment or arrangement, my hands are tied."

208.    The contents of the email in Paragraph 206 demonstrate that the Texas Defendants wrongfully obtained the Writ of Garnishment with the conscious desire to prevent Plaintiff from doing further business with JB Hunt and injuring Plaintiff's ability to be paid from prospective business with JB Hunt.

209.    The Texas Defendants also made the threat in violation of TEX. FIN. CODE ANN. § 392.301(a)(8).

210.    As a result of the Texas Defendants threats to interfere with the contract and prospective business Plaintiff had with JB Hunt, Plaintiff suffered actual damages in the amount of $24,000.00.

## COUNT XII
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS

**(CH ROBINSON)**

211.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

212.     The Texas Defendants are third-party debt collectors.

213.     The Texas Defendants wrongfully, willfully, and intentionally threatened to interfere with the carrier contract and prospective business that Plaintiff has with CH Robinson.

214.     On or about September 8, 2020, Plaintiff entered into a carrier contract with CH Robinson to pick-up, move and deliver through interstate commerce, the cargo of its shipping customers.

215.     The contract is current and ongoing and offers Plaintiff the opportunity to conduct shipments at will. Because Plaintiff has done shipments previously with CH Robinson, there is a reasonable probability that Plaintiff will ship again with CH Robinson.

216.     On or about January 8, 2021, the Texas Defendants obtained a Writ of Garnishment from the Harris County Clerk Office.

217.     The Texas Defendants obtained the Writ of Garnishment in violation of 15 U.S.C. § 1962(i)(2)(A) and (B).

218.     The Texas Defendants used the Writ of Garnishment to threaten Plaintiff that if he did not make a payment to them, they would interfere with the contract and prospective business that Plaintiff has with CH Robinson.

219.     Specifically, on February 2, 2021, the Texas Defendants, acting through its agent, Defendant Kelly, sent the following email, "Our lead counsel has agreed to release your accounts with only a $300.00 payment and some kind of arrangement. Just FYI I am scheduled to send UCC account receivables freeze request to a couple of your vendors today with CH Robinson and JB Hunt being the first. I don't want to do that but without any kind of payment or arrangement, my hands are tied."

220.     The contents of the email in Paragraph 206 demonstrate that the Texas Defendants wrongfully obtained the Writ of Garnishment with the conscious desire to prevent Plaintiff from doing further business with JB Hunt and injuring Plaintiff's ability to be paid from prospective business with JB Hunt.

221.     The Texas Defendants also made the threat in violation of TEX. FIN. CODE ANN. § 392.301(a)(8).

222.     As a result of the Texas Defendants threats to interfere with the contract and prospective business Plaintiff had with JB Hunt, Plaintiff suffered actual damages in the amount of $66,000.00.

**COUNT XIII**
**NEGLIGENT MISREPRESENTATION**
**(AGREEMENT TO AVOID LEGAL ACTION)**

223.     Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

224.     The Texas Defendants are third-party debt collectors.

225.     The Texas Defendants, through its agent, Defendant Kelly made a negligent misrepresentation to Plaintiff regarding an agreement to avoid any legal action.

226.     In or about December 2020, Defendant Kelly placed a call to Plaintiff to discuss an agreement with Plaintiff that would resolve debt payments and avoid any legal action. During the call, Defendant Kelly and Plaintiff reached a tentative agreement.

227.     Defendant Kelly made a representation to Plaintiff that the agreement was being taken to Defendant Kelly for approval to avoid any legal action.

228.     Defendant Kelly further represented that he had spoken to Defendant Regent about the agreement and that the agreement would avoid the Texas Defendants filing any legal action against Plaintiff.

229.     Defendant Kelly made these representations in the course of doing his job as an agent for a debt collector.

230.     However, on December 28, 2020, the Texas Defendants filed a legal action against Plaintiff in Harris County Court.

231.     Defendant Regent provided false information in his guidance of Defendant Kelly by instructing Defendant Kelly to procure an agreement with Plaintiff to avoid legal action. Defendant Regent knew and Defendant Kelly should have known that no agreement was under consideration and that Defendant Regent in fact planned to file a legal action.

232.     In a phone call to plaintiff on February 2, 2021, Defendant Kelly apologized to Plaintiff and stated, "I apologize Mr. Carter, I was not aware that the attorney was going to do that...I know I told you that he was reviewing the agreement, but I guess he took a different course..."

233.     Defendant Regent and Defendant Kelly did not exercise reasonable care or competence when representing to Plaintiff that an agreement to avoid legal action was actively under consideration.

234.     Plaintiff suffered pecuniary losses totaling $92,286.00 by justifiably relying on the representation from Defendant Kelly that he negotiated an agreement with Plaintiff to be presented to Defendant Regent for consideration and while under consideration, no legal action would be taken.

## PRAYER FOR RELIEF

In order to prevent further injury, harm, damages and losses to Plaintiff which have already occurred, it is appropriate, and the Plaintiff request that an immediate temporary restraining order issue against Defendant U.S. Bank, N.A., and an immediate temporary restraining order and preliminary and permanent injunction issue against all of the Texas Defendants. These restraining orders and permanent injunctions should be issued pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65.

**WHEREFORE, Plaintiff prays for judgment against the Defendants and that the Court:**

(1) issue an immediate temporary restraining order against Defendant U.S. Bank from enforcing or acting upon the Writ of Garnishment against any and all accounts held by Plaintiff, or in the name of Plaintiff;

(2) issue an immediate temporary restraining and preliminary injunction and a permanent injunction order against the Texas Defendants preventing the Texas Defendants from wrongfully obtaining judgments; violating the provisions of the FDCPA; violating the provisions of the Texas Debt Collections Practices Act; violating the provisions of Texas Debt Trade Practices Act; interfering with the economic contracts of Plaintiff and interfering with the prospective business relations and contracts of Plaintiff;

(3) award Plaintiff statutory damages from the Texas Defendants in the amount of $1,000.00 for violations of the FDCPA pursuant to 15 U.S.C. §1692(k)(a)(2);

(4) award Plaintiff actual damages from the Texas Defendants in the amount of $92,286.00;

(5) award Plaintiff punitive damages from the Texas Defendants in the amount of $5,000.00 and;

(6) grant such other relief as the Court deems equitable, just, and proper.

25

Respectfully submitted,

Robert E. Carter
Plaintiff
923 S. Hastings Way #308
Eau Claire, Wisconsin 54701
O: (715) 895-8423
F: (715) 895-8451



U.S. POSTAGE
$8.55
FCMF
Orig: 54701
02/26/21
2000062057
R2205KI34485

6W 0024

CPU

7020 2450 0000 4986 9079



Robert E Carter
923 S. Hastings Way #368
Eau Claire, WI 54701

Clerk of the Court
United States District Court
Southern District of Texas
P.O. Box 61010
Houston, TX 77208

United States Courts
Southern District of Texas
F I L E D

MAR 0 4 2021

Nathan Ochsner, Clerk of Court